## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ayuda, Inc.<br>6925B Willow St, N.W.<br>Washington, DC 20012; | ) <br> ) <br> ) <br> ) <br> ) |
| Catholic Charities of the Archdiocese of<br>Washington DC<br>924 G St., N.W.<br>Washington, DC 20001; | ) <br> ) <br> ) <br> ) <br> ) |
| Catholic Legal Immigration Network, Inc.<br>8757 Georgia Avenue, Suite 850<br>Silver Spring, MD 20910; | ) <br> ) <br> ) <br> ) |
| and Legal Aid Justice Center<br>1000 Preston Avenue, Suite A,<br>Charlottesville, VA 22903, | ) Case No. 1:13-cv-1266 <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) |
| Federal Trade Commission,<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

## **COMPLAINT**

1.      Plaintiffs Ayuda Inc., Catholic Charities of the Archdiocese of Washington D.C.,

Catholic Legal Immigration Network, Inc., and Legal Aid Justice Center ("Plaintiffs"), by and

through their attorneys, bring this action under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552 (2012), for injunctive and other appropriate relief and seeking disclosure and

release of agency records improperly withheld from Plaintiffs by the Federal Trade Commission

("FTC" or "Defendant").

## PARTIES

2.      Ayuda Inc. ("Ayuda") is a non-profit agency that advocates for low-income immigrants through direct legal, social, and language services.  Among other things, Ayuda has an initiative to identify and address misleading and deceptive acts and practices committed against immigrants.  The initiative includes direct representation of immigrants, as well as evaluating and assessing the performance of government agencies' protection of immigrant rights.

3.      Catholic Charities of the Archdiocese of Washington, D.C. ("Catholic Charities") is a non-profit entity that provides a range of social and legal services, including legal services for low income and vulnerable immigrants within Washington, D.C. and five counties in Maryland, education for community groups on legal issues that impact vulnerable members of the community, and advocacy before federal agencies to protect immigrants and their families from misleading and deceptive business practices.

4.      Catholic Legal Immigration Network, Inc. ("CLINIC") is a non-profit agency that provides administrative support and services to a network of over 215 affiliated non-profit entities in 300 locations that, in turn, provide legal services to low-income and vulnerable immigrants throughout the United States.  Among other things, CLINIC provides affiliates within its network with strategic, administrative, and technical support to help manage their respective programs.  CLINIC also advocates for immigrant rights before federal agencies.

5.      Legal Aid Justice Center ("LAJC") is a non-profit entity that provides legal representation for low-income individuals in Virginia.  Its mission is to serve those in Virginia's communities who have the least access to legal resources.  LAJC provides a full range of legal services to its clients, including representation and advocacy to prevent unfair and deceptive practices that impact low-income individuals within Virginia.

6.     Defendant is an independent administrative agency of the government of the United States within the meaning of 5 U.S.C. § 551(1).

### JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), which confers jurisdiction upon the District Court for the District of Columbia to enjoin the FTC from withholding agency records and to order the production of FTC records improperly withheld under the FOIA, and 28 U.S.C. § 1331, which confers jurisdiction on United States District Courts to hear cases arising under the federal laws of the United States, including appeals arising under the FOIA.

8.     Venue is proper pursuant to both 5 U.S.C. § 552(a)(4)(B), which provides the United States District Court for the District of Columbia as a venue for cases arising under an appeal of the FTC's denial of a request under the FOIA, and 28 U.S.C. § 1391(e) as it provides for cases against the FTC to be brought in the District Court for the District of Columbia, where a substantial part of the events giving rise to this claim occurred.

9.     This Court has the authority to render the injunctive relief requested pursuant to 5 U.S.C. § 552(a)(4)(B).

### PLAINTIFFS' REQUESTS UNDER THE FOIA

**General Overview Of The
Consumer Information System ("CIS") Database**

10.     The FTC is the primary federal agency responsible for protecting consumers from unfair and deceptive acts and practices.

11.     Consumers can submit complaints to the FTC concerning practices that they believe may be unfair or deceptive, or otherwise violate federal or state consumer protection

laws, including, but not limited to, business practices that relate to deceptive advertising, unlawful telemarketing, unlawful marketing, or that may promote or facilitate identity theft.

12.     Consumers can submit complaints about businesses to the FTC by calling the FTC's telephone call center (the Consumer Response Center or "CRC"), or completing an online form at consumer.gov, consumer.gov/idtheft, or donotcall.gov.  (CISADMINR-00101-103.)[1]

13.     Upon information and belief, Defendant stores and indexes all complaints in a central repository known as the Consumer Information System ("CIS").

14.     Upon information and belief, CIS includes at least 90 fields of data that correspond to information either provided by a consumer (*e.g.*, the allegedly offending company's name), or automatically generated by the database (*e.g.*, the time at which the complaint was submitted).

15.     Some CIS fields request a consumer's personally identifying information ("PII"), such as first and last name, street address, e-mail address, date of birth, or telephone number. (CISADMINR-00115.)

16.     The majority of CIS fields do not request that a consumer provide PII.  For example, some fields request that consumers provide information concerning the company about which they are complaining, or that they describe the nature of their complaint.

**The FOIA Requests**

17.     Pursuant to the FOIA, Plaintiffs requested that the FTC produce the following fields of data from the CIS:[2]

---

[1]     References to CISADMINR refers to the record included in Plaintiffs' administrative appeal of the FTC's denial of their request under the FOIA.  A true and correct copy of Plaintiffs' appeal, and the portions of the administrative record to which Plaintiffs have access, has been attached as Exhibit A.

[2]     Plaintiffs submitted a request on March 27, 2013, and a request on May 24, 2013. Plaintiffs appealed the FTC's denial of the requests together and for simplicity the table

FIELDS

| Category | Requested Fields |
|---|---|
| CIS Generated Field | Reference Number |
| | Created Date |
| | Complaint Source |
| | Complaint Date |
| | Entered Date |
| Complaint Information Fields | Complaint Info Product Service Description |
| | Complaint Info Law Violation Code |
| | Complaint Info Law Violation Description |
| | Complaint Info Statute Code |
| | Complaint Info Statute Description |
| | Phone in registry? |
| | Other Information Complaint Date |
| | Other Information Product Service Description |
| | Other Information Existing Business Relationship |
| | Other Information Pre-Recorded Message |
| | Other Information Requested Entity to Stop Calling |
| | Theft Activity First Noticed Date |
| | Theft Activity First Occurred Date |
| | Theft Incident Theft Type Description |
| | Theft Incident SubType Description |
| | Associated Institution Name |
| | Suspect Alias, Company Name |
| Complainant Geographic Information Fields | Consumer Address, City |
| | Consumer Address, State Name |
| | Consumer Address, ZIP Code |
| | Consumer Address, Country Name |
| Company Information Fields | Company Name |
| | Company Address, Line 1 |
| | Company Address, Line 2 |
| | Company Address, Line 3 |
| | Company Address, City |
| | Company Address, State Code |
| | Company Address, State Name |
| | Company Address, Country Code |
| | Company Address, Country Name |
| | Company Address, ZIP Code |
| | Company Address, ZIP Code Extension |
| | Company State |
| | Company Phone, Area Code |
| | Company Phone, Number |
| | Company Email |
| | Company Website |
| Comment Fields | Other Information Comments |
| | Complaint Info Comments |

includes all the fields discussed in either initial request, or in the administrative appeal. These fields are collectively referred to in this Complaint as the "Request."  A copy of the original requests can be found in the administrative record at CISADMINR-00001-2, 9, 14-23.  *See* Exhibit A.

18.     Upon information and belief, none of the fields listed in the preceding paragraph was designed or intended to store PII.

**Initial Grant Of Request**

19.     On April 25, 2013, a member of the FTC staff (the "FTC Staff") granted Plaintiffs' Request.[3] (CISADMINR-00005.)

20.     The FTC Staff estimated that it would take 32 hours of time to export all of the requested fields for all CIS records to Plaintiffs.  The FTC Staff further estimated that the total cost to comply with the Request would be approximately $3,982.  (Id.)

21.     After Plaintiffs agreed to the cost estimate, the FTC Staff confirmed that Plaintiffs' FOIA Request had been granted and that the data would be produced.  (CISADMINR-00009.)

**Subsequent Denial Of Request**

22.     On May 14, 2013, the FTC Staff informed Plaintiffs that the agency had reversed its decision to grant the Request.

23.     The FTC Staff informed Plaintiffs that although the requested fields were not designed, or intended, to capture PII, "people frequently enter information into the wrong fields." (CISADMINR-00030.)

24.     The FTC Staff contended that the FTC could be subject to "civil and criminal penalties" if it released PII that was accidentally inserted by a consumer in the wrong CIS Field. (CISADMINR-00027.)

---

[3]     As of April 25, 2013, Plaintiffs had not included the two Comment Fields in their request. As a result, the original grant of the request would not have included the two Comment Fields.

25.     The FTC Staff contended that they were required under the FOIA to manually review each record in CIS to confirm that it did not accidentally contain PII that had been entered by a consumer into the wrong field prior to disclosing the information.

26.     Based upon its belief that each record of the CIS database must be manually reviewed, the FTC revised its estimate of the burden for complying with the Request from 32 hours to "more than 8,000 hours," and revised the cost of complying with the Request to "more than $200,000." (CISADMINR-00011.)

27.     Based upon its revised cost estimate, the FTC Staff formally denied Plaintiffs' Request on June 10, 2013, and June 19, 2013. (CISADMINR-00031, 32.)

### Plaintiffs' Administrative Appeal and Subsequent Denial in Part of Plaintiffs' Appeal

28.     On July 10, 2013, Plaintiffs timely appealed the FTC Staff's denial of the Request to the General Counsel of the FTC.

29.     A true and correct copy of that appeal, and the administrative record submitted to the General Counsel, has been attached to this Complaint as Exhibit A.

30.     On August 12, 2013, the FTC granted in part and denied in part Plaintiffs' administrative appeal.

31.     A true and correct copy of the FTC's final decision has been attached to this Complaint as Exhibit B.

32.     Specifically, the FTC denied Plaintiffs' request for "any fields eliciting free-form responses" from consumers. (Exhibit B at 3.) The basis for the FTC's denial was the assertion that "consumers may and sometimes do enter their own private information in fields requesting company or other information" and, according to the FTC, the FOIA requires the Commission "to conduct a line-by-line review" of each of these fields to verify that no consumer has

mistakenly inserted their personal information in the field. (Exhibit B at 2, 3.) The FTC asserted

that because a "line-by-line review of multiple fields in millions of documents" would place an

"inordinate burden" upon the Commission, Plaintiffs' request was being denied. (*Id.* at 3.)

33.     The FTC also denied Plaintiffs' request for additional fields that it described as

not within the scope of the original FOIA requests. (Exhibit B at fn. 2.)

34.     Upon information and belief, the following chart summarizes those fields for

which the FTC has denied access (the "Denied Fields"):

FIELDS FOR WHICH
REQUEST HAS BEEN DENIED

| Category | Requested Fields | FTC Final Decision |
|---|---|---|
| Complaint Information Fields | Complaint Info Law Violation Code | Denied. |
| | Complaint Info Statute Code | Denied. |
| Complainant Geographic Information Fields | Consumer Address, ZIP Code | Denied. |
| Company Information Fields | Company Name | Denied. |
| | Company Address, Line 3 | Denied. |
| | Company Address, State Name | Denied. |
| | Company Address, Country Name | Denied. |
| | Company Address, ZIP Code | Denied. |
| | Company Address, ZIP Code Extension | Denied. |
| | Company Email | Denied. |
| | Company Website | Denied. |
| Comment Fields | Other Information Comments | Denied. |
| | Complaint Info Comments | Denied. |

**Plaintiffs Have Exhausted
Their Administrative Remedies**

35.     The FTC's August 12, 2013, decision to deny Plaintiff's administrative appeal has

become final and subject to review by this Court.

**<u>VIOLATIONS OF THE FREEDOM OF INFORMATION ACT</u>**

36.     As stated in the following counts, the FTC's denial of the Complaint Information

Fields, the Complaint Geographic Information Fields, the Company Information Fields, and the

Comment Fields referenced within paragraph 33 constitutes four independent violations of the FOIA.

## COUNT I
### The FTC's Denial Of The
### Complaint Information Fields
### Violates The Freedom of Information Act

37.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

38.     The Complaint Information Fields referenced in paragraph 33 were properly and timely included within the scope of Plaintiffs' FOIA requests as they are identical to, or similar to, other fields that were requested, and were identified to the FTC in the Administrative Appeal.

39.     The Complaint Information Fields in paragraph 33 do not elicit, and are designed to disallow, information protected by Exemption 6 to the FOIA.

40.     The Complaint Information Fields permit consumers to enter pre-selected values and do not permit consumers to insert free-form information.  As a result, it is impossible for the Complaint Information Fields to contain PII.

41.     The FOIA does not require that Plaintiffs resubmit additional requests to the FTC to obtain the Complaint Information Fields.

42.     There is no basis under the exemptions to the FOIA to segregate or redact the above-referenced Complaint Information Fields.

43.     The FTC's failure to disclose the Complaint Information Fields in response to Plaintiffs' request constitutes a violation of the FOIA.

## COUNT II
### The FTC's Denial Of The
### Complaint Geographic Information Field
### Violates The Freedom of Information Act

44.    Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

45.    The denied Complaint Geographic Information Field contains the zip code of each consumer responsible for a complaint in CIS.

46.    The FTC asserts that a consumer's zip code falls within Exemption 6 of the FOIA because, according to the FTC, "if both the consumer's zip code and the company name are released, then a company would be able to identify the complainant" if the complainant originated from a zip code "encompassing smaller populations."  (Exh. B at 4.)

47.    There is no factual basis in the administrative record to support the FTC's assertion that a company would be able to identify a consumer as the originator of a complaint if the consumer's zip code were provided.

48.    Furthermore, the FTC's interpretation of Exemption 6 of the FOIA as precluding the Commission from disclosing a complainant's zip code is inconsistent with the positions of several other federal agencies.

49.    For example, in addition to the FTC, the Consumer Financial Products Bureau ("CFPB") collects complaints by consumers concerning conduct that may be unfair or deception.

50.    The CFPB publicly discloses the zip code of a consumer who files a complaint as well as the name of the company about which the consumer has complained.  Exhibit C includes a true and accurate example of consumer complaint information disclosed by the CFPB containing both the consumer's zip code and the name of the company about which the consumer has complained.

51.     As a consumer's zip code does not constitute personal information for the purpose of Exemption 6, the FTC's failure to disclose the information violates the FOIA.

52.     Even if the FTC is correct and some subset of zip codes that correspond to unpopulated areas might theoretically facilitate the identification of the complainant, a federal agency may not deny a request for information from a database merely because some information in that database may contain exempt material.  An agency is required to segregate the requested portion of the database that may contain exempt material and the "non-exempt portions. . . must be disclosed." *Trans-Pacific Policing Agreement v. Customs Service*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).

53.     To the extent that it is theoretically possible for a company to identify a consumer who originates from a "zip code[] encompassing smaller populations," (Exhibit B at 4), the FTC has made no effort to segregate or redact complaints that originate from zip codes with small populations, and produce complaints that originate from the majority of zip codes.

54.     The FTC's failure to attempt to segregate zip code information which does not raise any privacy concerns violates the FOIA.

55.     Even if the consumer's zip code could theoretically be used to identify some consumers, and the FTC is not capable of segregating those zip codes where such a risk exists, Exemption 6 of the FOIA applies only if the disclosure of PII constitutes a clearly unwarranted invasion of personal privacy and the privacy interest that would be compromised by disclosure outweighs the public's interest in the requested information.  *Multi AG v. Media LLC v. Dept. of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).

56.     The public has a strong interest in the disclosure of the zip codes of complainants.

57.     Among other things, disclosure of complainants zip codes would permit the public, including the Plaintiffs, to monitor the effectiveness of the FTC's consumer protection efforts by measuring the impact of the FTC's enforcement initiatives on the volume and nature of consumer complaints across, and between, zip codes.

58.     Among other things, disclosure of complainants' zip codes would permit the public, including the Plaintiffs, to verify whether the statistical conclusions published by the FTC concerning the number and type of complaints filed by consumers are consistent between and among different geographic areas.

59.     Among other things, disclosure of complainants zip codes would permit the public, including the Plaintiffs, to quickly and efficiently review the complaints relating to entities against which the FTC initiates an enforcement action, and against entities which the FTC fails to initiate enforcement actions, in order to monitor the degree to which FTC enforcement actions address, or fail to address, consumer reports of unlawful conduct, and the degree to which FTC enforcement actions favor, or disfavor, the protection of consumer groups within particular geographic areas.

60.     To the extent that the disclosure of consumer zip codes implicates a privacy interest, there is no basis in the administrative record to support the FTC's decision that such privacy interest outweighs the public's interest in disclosure.  As a result, the FTC's failure to disclose consumers' zip codes violates the FOIA.

**COUNT III**
**The FTC's Denial Of The**
**Company Information Fields**
**Violates The Freedom of Information Act**

61.    Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

62.    Plaintiffs requested that the FTC provide a *Vaughn* Index or otherwise estimate the rate at which it believes PII is incorrectly entered into the Company Information Fields. (CISADMINR-00023-24, 30.)

63.    The FTC refused to provide a *Vaughn* Index or otherwise estimate the rate at which it believes PII is incorrectly entered into each of the Company Information Fields, stating that "a *Vaughn* Index is not required unless we are in litigation."  (CISADMINR-00030.)

64.    In a random sample of 500 consumer complaints from CIS, and a larger non-random sample of 19,229 consumer complaints from CIS, the FTC did not identify a single instance in which a consumer accidentally inserted their PII in the Company Information Fields (*e.g.,* Company Name, Company Address Lines 1-3, and Company Address City).

65.    There is no evidence in the administrative record that consumers mistakenly insert PII in the Company Information Fields referenced in Paragraph 33.

66.    Upon information and belief, consumers do not, in fact, with any statistical frequency, accidentally enter their PII in any of the Company Information Fields referenced in Paragraph 33.

67.    To the extent that the Company Information Fields implicate any privacy interest, such interest is outweighed by the public's interest in disclosure.

68.    Among other things, disclosure of the Company Information Fields would permit the public, including the Plaintiffs, to monitor the effectiveness of the FTC's consumer

protection efforts by comparing the FTC's enforcement initiatives to the volume and nature of consumer complaints against specific companies.

69. Among other things, disclosure of the Company Information Fields would permit the public, including the Plaintiffs, to verify the statistical conclusions published by the FTC concerning the number and type of complaints filed by consumers relating to businesses that operate in specific industries.

70. Among other things, disclosure of the Company Information Fields would permit the public, including the Plaintiffs, to quickly and efficiently review the complaints relating to entities against which the FTC initiates an enforcement action, and against entities which the FTC fails to initiate enforcement actions, in order to monitor the degree to which FTC enforcement actions address, or fail to address, consumer reports of unlawful conduct.

71. Among other things, disclosure of the Company Information Fields would permit consumers, including the Plaintiffs on behalf of their clients, to quickly and efficiently review complaints submitted about entities with which they may do business in order to form an educated opinion concerning the entity's business practices.

72. Among other things, disclosure of the Company Information Fields would permit companies to quickly and efficiently review complaints that have been submitted against them to help the company identify potential advertising, marketing, or privacy practices which may be perceived as failing to comply with legal requirements.

73. The FTC's failure to disclose the Company Information Fields referenced in Paragraph 33 constitutes a violation of the FOIA.

**COUNT IV**
**The FTC's Denial Of The**
**Comment Fields**
**Violates The Freedom of Information Act**

74.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

75.     Plaintiffs requested that the FTC provide a *Vaughn* Index or otherwise estimate the rate at which it believes PII is incorrectly entered into the Comment Fields.  (CISADMINR-00024, 30.)

76.     The FTC refused to provide a *Vaughn* Index or otherwise estimate the rate at which it believes PII is incorrectly entered into each of the Comment Fields stating that "a *Vaughn* Index is not required unless we are in litigation."  (CISADMINR-00030.)

77.     Based upon a random sample of 500 consumer complaints from CIS, and a larger non-random sample of 12,620 consumer complaints from CIS, the FTC identified between 12% and 25% of complaints in which some form of PII may have been accidentally included within the Comment Fields.

78.     Exemption 6 of the FOIA applies only if the disclosure of PII constitutes a clearly unwarranted invasion of personal privacy and the privacy interest that would be compromised by disclosure outweighs the public's interest in the requested information.  *Multi AG v. Media LLC v. Dept. of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).

79.     Disclosure of the Comment Fields does not constitute an invasion of personal privacy.

80.     Among other things, Consumers are informed that the information that they include within the Comment Fields may be disclosed to third parties pursuant to a request under

the FOIA, and are reminded when providing information in the Comment Fields not to include any sensitive PII within those fields.

81.    Upon information and belief, most, if not all, of those complaints which do contain PII in the Comment Fields do not contain the type of PII which is likely to cause economic harm to a consumer.  For example, upon information and belief consumers do not with any statistical frequency enter a Social Security Number or an active financial account number in the Comment Fields.

82.    Among other things, disclosure of the Comment Fields would permit the public, including the Plaintiffs, to verify the statistical conclusions published by the FTC concerning the number and type of complaints filed by consumers.  Specifically, the public would be able to verify whether the code assigned to a consumer complaint concerning the type of violation at issue was accurate based upon description of the actual complaint found within the Comment Fields.

83.    Among other things, disclosure of the Comment Fields would permit the public, including the Plaintiffs, to monitor the effectiveness of the FTC's consumer protection efforts by measuring the impact of the FTC's enforcement initiatives on the volume and nature of consumer complaints.

84.    Among other things, disclosure of the Comment Fields would permit the public, including the Plaintiffs, to quickly and efficiently review the complaints relating to entities against which the FTC initiates an enforcement action, and against entities which the FTC fails to initiate enforcement actions, in order to monitor the degree to which FTC enforcement actions address, or fail to address, consumer reports of unlawful conduct.

85.     Among other things, disclosure of the Comment Fields would permit consumers, including the Plaintiffs on behalf of their clients, to quickly and efficiently review complaints submitted about entities with which they may do business in order to form an educated opinion concerning the entity's business practices.

86.     The FTC's failure to disclose the Comment Fields constitutes a violation of the FOIA.


### REQUESTED RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter an order:

1.     Declaring that the FTC has wrongfully withheld the requested agency records and finding the FTC's actions in violation of the FOIA;

2.     Requiring the FTC to disclose all, or a portion of, the Requested Fields by making those records available to the Plaintiffs in the format in which they have been requested;

3.     Enjoining the FTC from refusing future requests for the Requested Fields;

4.     Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

5.     Granting such other relief as the Court may deem just and proper.

Respectfully submitted,


/s/ David Zetoony_____
David Zetoony, D.C. Bar No. 486456
David.zetoony@bryancave.com
Josh James, D.C. Bar No. 988796
Josh.James@bryancave.com
Bryan Cave LLP
1155 F Street, NW
Washington, DC  20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200

*Attorneys for Ayuda, Inc., Catholic Charities of the Archdiocese of Washington DC, Catholic Legal Immigration Network, Inc., and Legal Aid Justice Center*

August 20, 2013